UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INTERNATIONAL ALLIANCE OF FIRST
NIGHT CELEBRATIONS, INC.,

                        Plaintiff,

        v.                                  3:08-cv-1359

FIRST NIGHT, INC.,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff commenced the instant action claiming that Defendant First Night, Inc. is infringing on Plaintiff International Alliance of First Night Celebrations, Inc.'s use and management of the FIRST NIGHT mark. Defendant moves to dismiss this case on the ground of lack of personal jurisdiction or, in the alternative, to transfer the case.

**I.     FACTS**

Plaintiff International Alliance of First Night Celebrations, Inc. ("FNI") is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts. It has a principal place of business in Johnson City, New York. Defendant First Night, Inc. ("FNB") also is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts. Its principal place of business is in Boston, Massachusetts.

Defendant FNB owns the trademark "First Night" (the "Mark") to identify "posters and commemorative programs dealing with art festivals" and "entertainment services, namely, presenting an annual arts festival."  Duly licensed First Night celebrations are celebrated on New Year's eve.

Plaintiff FNI was organized under the direction of Defendant FNB to, among other things, promote and foster the concept of First Night, to authorize cities to hold First Night events, and to ensure compliance with licensing standards.  On August 16, 1993, FNB licensed FNI to assist other communities in developing and creating First Night celebrations, to promote the concept of First Night, and to sub-license the Mark.  FNB granted to FNI a nontransferable and exclusive license to use the Mark for an initial five-year term.  After the five-year term, subject to compliance with certain conditions precedent, FNB agreed to transfer all rights into the Mark to FNI.  The license agreement was drafted in Massachusetts, executed in Massachusetts, and contains a Massachusetts choice of law provision.

In July 2008, FNB informed FNI that it would be "taking back" the Mark.  Plaintiffs commenced the instant litigation claiming that FNB's conduct in connection with its efforts to take back the Mark constitutes a misappropriation of FNI's intellectual property rights in violation of 15 U.S.C. § 1114, unfair competition in violation of 15 U.S.C. § 1125(a), common law unfair competition, breach of contract, tortious interference with contractual relations, and tortious interference with prospective business relations.

Defendant FNB now moves to dismiss this claim on the ground that the Court lacks personal jurisdiction over it.

## II.        STANDARD OF REVIEW

When the Court is presented with a motion pursuant to Fed. R. Civ. P. 12(b)(2), "[i]f

the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima*

*facie* showing of personal jurisdiction over defendant.  CutCo Indus., Inc. v. Naughton, 806

F.2d 361, 364 (2d Cir. 1986).  "[I]f the court holds an evidentiary hearing . . . the plaintiff must

demonstrate personal jurisdiction by a preponderance of the evidence."  Id.

> Personal jurisdiction over a defendant in a diversity action is determined by the law
> of the forum in which the court sits.  Arrowsmith v. United Press International, 320
> F.2d 219, 223 (2d Cir. 1963) (en banc).  Although, as alluded to, the plaintiff has
> the ultimate burden of establishing jurisdiction over defendant by a preponderance
> of the evidence . . . until an evidentiary hearing is held, it need make only a prima
> facie showing by its pleadings and affidavits that jurisdiction exists. . . . Those
> documents are construed in the light most favorable to plaintiff and all doubts are
> resolved in its favor.

Id. at 365.

## III.        DISCUSSION

### a.        N.Y.C.P.L.R. § 302(a)(3)

Section 302(a)(3) of the New York Civil Practice Law and Rules permits jurisdiction

over tortious acts committed outside of New York that cause injuries within New York

provided (1) the defendant regularly does or solicits business, or engaged in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed

or services rendered, in the state, or (2) expects or should reasonably expect the act to have

consequences in the state and derives substantial revenue from interstate or international

commerce.

> This provision rests the exercise of jurisdiction on five elements: (1) The defendant
> committed a tortious act outside the state; (2) the cause of action arose from that
> act; (3) the act caused injury to a person or property within the state; (4) the
> defendant expected or should reasonably have expected the act to have

consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce.

Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 106 (2d Cir. 2006).

"To satisfy the first element, the plaintiff 'need not actually prove that defendant committed a tort but rather need only state a colorable cause of action.'" Sole Resort, 450 F.3d at 106 (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 125 (2d Cir. 2002)). Here, the tortious acts are claimed to be: (i) Defendant's purported termination of the license agreement; (ii) Defendant's claimed interference with Plaintiff's exclusive right to license the Mark; and (iii) Defendant's communications with sub-licensees that it was taking back the mark. These assertions state a colorable cause of action and satisfy the first and second elements.

The third element focuses on whether Defendant's conduct has caused injury within New York. The tort of trademark infringement cause injury where the allegedly infringed intellectual property is held. McGraw-Hill Companies, Inc. v. Ingenium Technologies, Inc., 375 F. Supp.2d 252, 256 (S.D.N.Y. 2005). Because Plaintiff claims to have owned the property in New York, this element is satisfied.

The fourth element also is satisfied. It appears that Defendant was aware that Plaintiff was located in New York and, therefore, reasonably should have anticipated that any efforts in derogation of Plaintiff's rights would have consequences in New York.

In support of the fifth element, Plaintiff contends that Defendant receives support from out-of-state sponsors, such as FedEx and Borders, and that persons seeking support from these companies may have to reach their offices outside of Massachusetts. These

allegations do not suffice to establish a *prima facie* case that Defendant receives substantial revenue from interstate commerce.  Best Cellars, Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp.2d 431, 448 (S.D.N.Y. 2000).  The record evidence demonstrates that Defendant FNB promotes first night in the Boston area and, thus, its actions are of a local character.  That FNB may accept, or even solicit, support from out-of-state entities does not satisfy Plaintiff's burden of demonstrating that FNB derives *substantial revenue from interstate commerce*. Indeed, the receipt of donations does not fit within traditional definitions of the term "commerce."  See Black's Law Dict. 285 (8th ed. 2004) (defining commerce to mean "[t]he exchange of goods and services. . . ."); see also Girl Scouts of U.S. v. Steir, 102 Fed. Appx. 217 (2d Cir. 2004) (unpublished) ("[W]e note that Girl Scouts has not shown that the Steirs derive any revenue-let alone, substantial revenue-from goods used or services rendered in New York or from interstate or international commerce.  We know of no authority, and Girl Scouts cites us to none, to support their claim that the Steirs' efforts to secure a large monetary settlement from Girl Scouts on their New Hampshire claim satisfies the 'substantial revenue' requirement of § 302(a)(3)(ii).").  Further, Plaintiff does not quantify the amount of revenue that Defendant may receive from out-of-state sponsors.  Absent any meaningful allegation concerning Defendant's revenues derived from interstate commerce, the Court lacks personal jurisdiction pursuant to § 302(a)(3).

> **b.    § 302(a)(1)**

To exercise jurisdiction under N.Y.C.P.L.R. § 302(a)(1), Plaintiff must demonstrate that their cause of action arises from the Defendant's transaction of business in New York. See McGowan v. Smith, 52 N.Y.2d 268, 271 (1981).  "CPLR 302(a)(1) jurisdiction is proper 'even though the defendant never enters New York, so long as the defendant's activities here

were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007) (quoting Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71 (2006)).  "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'."  Fischbarg, 9 N.Y.3d at 380 (quoting McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967); see also CutCo, 806 F.2d at 365 ("A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.") (internal quotations, citations, and alteration omitted).  "Not all purposeful activity, however, constitutes a 'transaction of business' within the meaning of CPLR 302 (a)(1)."  Fischbarg, 9 N.Y.3d at 380.

> As the Second Circuit has noted:
>
> Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including:
>
> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Sunward Electronics, Inc. v, McDonald, 362 F.3d 17, 22 (2d Cir. 2004).

Here, in support of § 302(a)(1) jurisdiction, Plaintiff states that: (1) Defendant sent a letter to all licensees in August 2008 informing them that Defendant would be serving them

and that it was taking back management of the Mark;[1] and (2) Defendant has contracted with persons in New York to perform at First Night 2009 in Boston.

The Court finds that these allegations do not establish a *prima facie* showing of personal jurisdiction over Defendant. First, there *is* evidence that Defendant has an on-going contractual relationship with a New York corporation. The weight of this factor, however, must be tempered by the fact that the license agreement is between Defendant, a Massachusetts not-for-profit company, and Plaintiff, a Massachusetts not-for-profit company, that relocated to New York *after* the execution of the license agreement. This fortuitous event, the relocation of Plaintiff to New York after the execution of the license agreement, tends to negate any finding that Defendant voluntarily and/or purposefully availed itself of the privilege of doing business in New York.

Second, the license agreement was drafted, negotiated, and executed in Massachusetts. Third, the contract contains a Massachusetts choice-of-law provision. Fourth, there is insufficient evidence or allegation that Defendant solicited the license agreement in New York, whether Defendant entered New York for purposes of performing under the license agreement, or that Defendant otherwise voluntarily and purposefully

---

[1] Although the Court has accepted the exhibits submitted by Plaintiff, in any future filings in this or other cases, Plaintiff shall strictly comply with the requirements of General Order 22, § 4.4 ("All attachments must be described in sufficient details so the Court and opposing counsel can easily identify and distinguish the filed attachments. Vague or general descriptions are insufficient (i.e. "Exhibit 1"). Rather, each attachment shall have a descriptive title identifying, with specificity, the document that is being filed. . . . Failure to adequately describe attachments may result in the document being rejected by the Court.").

availed itself of the privilege of transacting business in New York.  it is unclear whether that letter was ever sent to anyone within the State of New York.[2]

With respect to the tort claims, the Court similarly finds that Plaintiff has not made a *prima facie* showing of §302(a)(1) jurisdiction.  In addition to the reasons set forth above, "New York court have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983) (the sending of a "cease and desist" letter into New York was insufficient to establish jurisdiction); see also Graphic Controls Corp. v. Utah Medical Products, Inc., 149 F.3d 1382, 1386-88 (2d Cir. 1998) (similar).  Assuming the August 2008 letter was sent to persons within New York, it simply states that Defendant "will honor and continue to honor all licenses for First Night organizations in good standing."  See Pl.'s Ex. 1 (stating "First Night Boston is making a very concerted effort to ensure a smooth transition. . . . We will honor and continue to honor all licensed for First Night organizations in good standing and will also work diligently to provide quality technical assistance and services to all.  We plan to create a comprehensive First Night 'how to' manual and to develop ways to best assist member organizations.  Plans also include conducting both regional meeting and a biannual conference. . . .").  At best, the letter contemplates the transaction of business in the future.  The letter appears to be informational and does not constitute the transaction of business in New York.  While Plaintiff's claims may derive, in part, from the sending of this letter, neither the letter itself nor any of Defendant's other actions constitute transacting business in New York or evidence

---

[2] Although Plaintiff asserts in its memorandum of law that the letter was sent to municipalities in New York, the letter itself does not so indicate.  The memorandum of law is not evidence.

Defendant's purposefully availing itself of the privilege of conducting activities in New York or invoking the benefits and protections of New York law.[3]

### c. Due Process

Assuming, *arguendo*, that Plaintiff has made a *prima facie* showing of jurisdsiction under §§ 302(a)(1) or 302(a)(3), the Court finds that it has not made a sufficient showing of minimum contacts to satisfy due process concerns. "Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not offend traditional notions of fair play and substantial justice." Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 127 (2d Cir. 2008) (internal quotations and citation omitted).

> To determine whether this is so, [the Court must] apply a two-step analysis in any given personal jurisdiction case. . . . First, [the Court must] ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction. . . . If the defendant has sufficient minimum contacts, [the Court must] proceed to the second stage of the due process inquiry, and consider whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case.

Porina, 521 F.3d at 127 (internal quotations and citations omitted). Defendant does not maintain offices, bank accounts, or employees in New York, it did not negotiate the subject contract in New York, it does not solicit business in New York, there are no allegations concerning its performance under the contract in New York, and there are insufficient allegations that Defendant otherwise engages in sufficient activities to establish minimum contacts with the State of New York. The facts that Defendant sent the August 2008 letter or sent Plaintiff a cease and desist letter or that it has contracted with New York artists to

---

[3] The fact that Defendant may have contracted with New York artists to perform at First Night 2009 is irrelevant to the personal jurisdiction issue. This litigation is unrelated to any contracts between Defendant and artists who performed at First Night Boston.

perform in Massachusetts are insufficient to establish minimum contacts.  These latter facts are too attenuated to satisfy due process.

### d.      Request for Discovery

Because Plaintiff has not made out a *prima facie* case of personal jurisdiction, the request for discovery on this issue is denied.  See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007).[4]

## IV.      CONCLUSION

For the foregoing reasons, the Court finds that it lacks personal jurisdiction over Defendant.  Accordingly, Defendant's motion to dismiss is GRANTED and the Complaint is DISMISSED.


IT IS SO ORDERED.

Dated:May 22, 2009

Thomas J. McAvoy
Senior, U.S. District Judge

---

[4] Plaintiff may pursue this action in the District of Massachusetts where the issue of personal jurisdiction would not seriously be in dispute.